UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KARTIK,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

No. 1:26-cv-00419-TLN-CKD

**ORDER**

This matter is before the Court on Petitioner Kartik's[1] ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2). For the reasons set forth below, Petitioner's motion is GRANTED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum seeker who entered the United States on or about December 27, 2022. (ECF Nos. 1-1, 1-3.) After entry, Petitioner was encountered by U.S. Border Patrol, processed, and released on an Order of Release on Recognizance, issued March 3, 2023. (ECF No. 1 at 5; ECF No. 1-2.) In the time since, Petitioner fulfilled the conditions of his release and applied for asylum and withholding of removal and protection under the Convention Against

---

[1] Petitioner's documents also list his name as "Kartik No Last Name" and "Kartik None". (ECF Nos. 1–2.)

1

Torture.  (ECF No. 1 at 5.)

Petitioner was detained on December 10, 2025 after he was asked to report to ICE.  (*Id.* at 2.)  Petitioner was provided no notice explaining the basis for revocation of his release and his request for a bond hearing was denied.  (*Id.* at 3, 5.)  After Petitioner was detained, the Department of Homeland Security issued him a Notice to Appear and initiated removal proceedings under section 240 of the Immigration and Nationality Act.  (*Id.* at 5; ECF No. 1-3.)

On January 20, 2026, Petitioner filed a petition for writ of habeas corpus challenging his detention as violating federal law and his due process rights.  (ECF No. 1.)  Petitioner also filed the instant motion for TRO seeking his immediate release.  (ECF No. 2.)

## II.   STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

## III.   ANALYSIS[2]

### A.   Likelihood of Success on the Merits

---

[2]   The Court finds Petitioner has met the requirements for issuing a TRO without notice. *See* Fed. R. Civ. P. 65(b).  Petitioner submitted the requisite affidavit and notified Respondents via electronic mail on January 20, 2026 that he would be filing the motion.  (ECF No. 2-2 ¶ 4.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

Petitioner has established a likelihood of success on his due process claim.  The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

As for the first step, the Court finds Petitioner demonstrated he likely has a protectable liberty interest.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.")  Petitioner gained a protected liberty interest in his continued freedom when he was released on his own recognizance on March 3, 2023.  Petitioner submits that he has complied with the conditions of his release.  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step – what procedures or process is due – the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

3

procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner was out of custody for nearly three years, during which time Petitioner sought asylum protection and complied with the conditions of his release. Despite that, Petitioner has now been detained without notice or a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025) (internal quotation and citation omitted). Here, Petitioner was released on his own recognizance and maintains that he has complied the conditions of his release, has no criminal history, no disciplinary infractions during his detention, and there is no evidence suggesting he poses a danger to the community. (ECF No. 1 at 5.) Based on this record, the Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest.

Finally, the Government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Petitioner's asylum application is ongoing and there is no final order of removal. Therefore, on this record, the Court can find no legitimate interest for

4

Respondents to continue detaining Petitioner.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice and a hearing to determine whether detention was warranted.  Respondents did not provide either.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.[3]

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  (ECF No. 2-1 at 22–23.)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a determination on his immigration and asylum proceedings.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").  In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

---

[3]    Petitioner also argues his detention violates the Immigration and Nationality Act as he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and instead his detention is governed under 8 U.S.C. § 1226(a).  (ECF No. 2-1 at 6–18.)  As the Court finds Petitioner's is entitled to preliminary relief based on his constitutional claim, the Court need not evaluate Petitioner's statutory claim.

balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order is GRANTED (ECF No. 2).

2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

3. Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody.

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondents show there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a

flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ORDERED TO SHOW CAUSE why this Court should not convert this temporary restraining order into a final order on the merits of Petitioner's habeas petition. Respondents shall file responsive papers by **Friday, January 23, 2026**.  Petitioner may file a reply, if any, by **Tuesday, January 27, 2026**.  The parties shall indicate in their briefing whether they waive a hearing.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: January 20, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE